**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BENJAMIN WITTES and<br>SCOTT R. ANDERSON,<br>P.O. Box 33226<br>Washington, D.C. 20033-3226,<br><br>        Plaintiffs,<br><br>    v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL<br>INTELLIGENCE,<br>Washington, D.C. 20511,<br><br>        Defendant. | Civil Action No. 20-2020 |

**COMPLAINT**

1.       Plaintiffs Benjamin Wittes and Scott R. Anderson bring this action against the

Office of the Director of National Intelligence ("ODNI") to compel compliance with the

Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. Plaintiffs allege as follows:

2.       Throughout his time in office, President Trump has publicly disagreed with and

undermined the assessments and operations of the various federal agencies comprising the

Intelligence Community.[1] He has contradicted the Central Intelligence Agency's determination

---

[1] The Intelligence Community is composed of 17 federal agencies, offices, and components: U.S. Air Force Intelligence, the U.S. Army Intelligence and Security Command, the Central Intelligence Agency, the Defense Intelligence Agency, the Department of Energy Office of Intelligence and Counterintelligence, the Department of Homeland Security Office of Intelligence and Analysis, the Department of State Bureau of Intelligence and Research, the Department of Treasury Office of Intelligence & Analysis, the Drug Enforcement Administration Intelligence Program, the Federal Bureau of Investigation, U.S. Marine Corps Intelligence, the National Geospatial-Intelligence Agency, the National Reconnaissance Office, the National Security Agency, the Office of Naval Intelligence, the ODNI, and U.S. Coast Guard Intelligence. *See* Office of the Dir. of Nat'l Intelligence, *How the IC Works*, *INTEL.gov*, https://www.intelligence.gov/how-the-ic-works (last visited July 17, 2020).

that Saudi Crown Prince Mohammad bin Salman was personally responsible for ordering the assassination of *Washington Post* columnist and U.S. resident Jamal Kashoggi;[2] embraced Russian President Vladimir Putin's denials of interference by the Russian Federation in the 2016 U.S. elections despite the Intelligence Community's conclusion that the opposite was true;[3] criticized intelligence officials as "naive" due to their evaluations of the relative threats posed by the Islamic State and the governments of Iran and North Korea;[4] and repeatedly accused members of the Intelligence Community of conspiring in a "deep state" plot to subvert his presidency[5]—all in public view.

     3.     The President has not limited his criticism of the Intelligence Community to public disagreement with their professional assessments. In April 2020, President Trump fired former Inspector General for the Intelligence Community Michael Atkinson, accusing him of "[taking] a fake report and [giving] it to Congress," a reference to Atkinson's role in notifying Congress of a whistleblower complaint regarding an August 2019 phone call between President Trump and Ukrainian president Volodymyr Zelensky, one of the events that precipitated the House of Representatives' impeachment of the President at the end of 2019. [6] The President also

[2] Shane Harris, *Trump Stands by Saudi Crown Prince in Kashoggi Killing*, Wash. Post (Nov. 17, 2018), https://www.washingtonpost.com/world/national-security/trump-stands-by-saudi-crown-prince-in-khashoggi-killing/2018/11/27/30894d90-f281-11e8-bc79-68604ed88993_story.html.
[3] Scott Horsley and Miles Parks, *Trump's Refusal to Back U.S. Intel Over Russia at Putin Summit Sparks Bipartisan Outrage*, Nat'l Pub. Radio (July 16, 2018), https://www.npr.org/2018/07/16/628973563/trump-putin-to-meet-after-new-charges-over-russias-2016-election-interference.
[4] Eileen Sullivan, *Trump Calls Intelligence Officials 'Naive' After They Contradict Him*, N.Y. Times (Jan. 30, 2019), https://www.nytimes.com/2019/01/30/us/politics/trump-intelligence.html.
[5] *See*, e.g., Peter Baker et al., *Trump's War on the 'Deep State' Turns Against Him*, N.Y. Times (Oct. 23, 2019), https://www.nytimes.com/2019/10/23/us/politics/trump-deep-state-impeachment.html.
[6] Jeremy Herb et al., *Trump Defends Firing Intelligence Community Watchdog*, CNN (Apr. 4, 2020), https://www.cnn.com/2020/04/04/politics/trump-michael-atkinson-inspector-general-

has sharply criticized Intelligence Community whistleblowers, including the one who filed the complaint regarding the President's phone call with Zelensky and whose lawyers claim to have received death threats following the President's statements.[7]

4.    More recently, national media outlets have reported that senior Trump Administration officials have pressed intelligence agencies to corroborate a theory that the novel coronavirus SARS-CoV-2 originated in a Chinese government laboratory in Wuhan, China, despite intelligence agencies' skepticism about finding conclusive evidence for such a theory and coronavirus geneticists' view that the SARS-CoV-2 pandemic likely began with transmission from animal to human.[8] The Administration's directive coincides with a broader campaign by the President and senior Administration officials to blame China and the World Health Organization for the pandemic.[9]

5.    Such repeated, public undermining of the Intelligence Community and pressure on specific investigations and analytic assessments by senior Executive Branch officials, and especially by the President, threaten to depress morale among civil servants and influence the objectivity of intelligence agencies' work. In order to produce accurate, fact-based assessments

fired/index.html.

[7] *See*, e.g., Maggie Haberman and Katie Rogers, *Trump Attacks Whistle-Blower's Sources and Alludes to Punishment for Spies*, N.Y. Times (Sept. 26, 2019), https://www.nytimes.com/2019/09/26/us/politics/trump-whistle-blower-spy.html; Ed Pilkington, *Trump Lashes Out at Whistleblower and Renews Attacks on House Intelligence Chair*, The Guardian (Sept. 30, 2019), https://www.theguardian.com/us-news/2019/sep/30/donald-trump-has-put-whistleblower-in-danger-lawyers-say-ukraine-impeachment.

[8] Mark Mazzetti et al., *Trump Officials Are Said to Press Spies to Link Virus and Wuhan Labs*, N.Y. Times (Apr. 30, 2020), https://www.nytimes.com/2020/04/30/us/politics/trump-administration-intelligence-coronavirus-china.html.

[9] *See* Donald G. McNeil Jr. and Andrew Jacobs, *Blaming China for Pandemic, Trump Says U.S. Will Leave the W.H.O.*, N.Y. Times (May 29, 2020), https://www.nytimes.com/2020/05/29/health/virus-who.html.

that inform policy decisions, intelligence analysts must operate free from political influence.[10]
And strong morale is necessary for civil servants across the Intelligence Community to perform
to the highest of their abilities in their work to keep the country safe.[11]

6.      The ODNI is aware of these imperatives. Every year since 2006, the ODNI has
administered the Analytic Objectivity and Process Surveys ("AOPS"), which track Intelligence
Community employees' views on whether they have experienced pressure to change their
analyses or have seen undue politicization in the creation of intelligence products. The AOPS
can help provide a credible baseline against which to compare allegations, like those above, that
the Trump Administration has pressed the Intelligence Community to conform its work to
political agendas. Indeed, the results of the AOPS for 2015—disclosed in response to a FOIA
request[12]—played a central role in the House of Representatives' 2016 investigation into whether
the U.S. Central Command's Joint Intelligence Center was pressured to alter its assessments of

[10] *See* Robert M. Gates, Dir. of Cent. Intelligence, Cent. Intelligence Agency, Address to C.I.A.
Analysts: Guarding Against Politicization (Mar. 16, 1992), https://www.cia.gov/library/center-
for-the-study-of-intelligence/kent-csi/volume-36-number-1/html/v36i1a01p_0001.htm
(describing the importance of objectivity in creating intelligence products to inform
policymakers); *see also* Michael Morrell, Avril Haines, and David S. Cohen, *Trump's
Politicization of U.S. Intelligence Could End in Disaster*, Foreign Policy (Apr. 28, 2020),
https://foreignpolicy.com/2020/04/28/trump-cia-intimidation-politicization-us-intelligence-
agencies-could-end-in-disaster/ ("Analytical objectivity—intelligence officials writing and
saying what they believe to be the truth without consideration for policy or politics—is
fundamental to U.S. national security.").
[11] *See* Office of the Dir. of Nat'l Intelligence, *Chief Human Capital Office – What We Do*,
https://www.odni.gov/index.php/who-we-are/organizations/enterprise-capacity/chco/chco-what-
we-do (last visited July 17, 2020) ("Ensuring the security of our nation requires hiring, training,
and retaining a highly skilled and connected intelligence workforce. . . . IC [Chief Human
Capital Office] seeks to . . . engage and motivate our employees through a sustained culture of
excellence.").
[12] Office of the Dir. of Nat'l Intelligence, *Selected CENTCOM Respondent Descriptions from the
FY2015 AOPS*, https://www.dni.gov/files/documents/FOIA/DF-2016-00301.pdf.

the counter-Islamic State campaign.[13] The investigation was conducted by a Task Force led in substantial part by current Director of Central Intelligence Mike Pompeo, who commented on the investigation's rationale by noting, "The most senior leaders in Central Command and the J2 had a deep understanding of the political narrative the administration was putting forth. The culture was one where you were rewarded for embracing that political narrative."[14]

7.     In addition, the ODNI has conducted annual climate surveys of personnel across the Intelligence Community to gauge their attitudes towards various aspects of their work. The anonymous questionnaire prompts Intelligence Community employees to rate their general job satisfaction, approval of their superiors, levels of partisan political influence in their workplaces, and the degree to which employees can disclose suspected violations of the law without fear of reprisal.[15] Limited results of past Intelligence Community climate surveys are publicly available on the ODNI's website, although they only reflect results through 2017 and do not break them down by individual Intelligence Community agency or component.

8.     Plaintiffs seek to understand and explain to the public how the President's and his allies' targeting of the Intelligence Community has affected its ability to carry out its mission free of political influence and with an energized, confident workforce. To that end, Plaintiffs

---

[13] Staff of H.R. Joint Task Force on U.S. Cent. Command Intelligence Analysis, 114th Cong., *Initial Findings of the U.S. House of Representatives Joint Task Force on U.S. Central Command Intelligence Analysis*, 9 (2016), https://republicans-intelligence.house.gov/uploadedfiles/house_jtf_on_centcom_intelligence_initial_report.pdf#page=1.

[14] Nancy A. Youseff and Shane Harris, *Republicans and Democrats Agree: CENTCOM Cooked ISIS War Intel*, Daily Beast (Apr. 13, 2017), http://www.thedailybeast.com/articles/2016/08/11/republicans-and-democrats-agree-centcom-cooked-isis-war-intel.html.

[15] *See* Office of the Dir. of Nat'l Intelligence, *2017 IC Employee Climate Survey: Item Results*, https://www.dni.gov/files/documents/CHCO/2017_ICECS_Results_IC-All_Items.pdf.

submitted two FOIA requests seeking any documents reporting the results of the ODNI's annual

AOPS and climate surveys from 2015–2020—including data broken down by agency, office, and

component, if available—as the results from both surveys ought to provide relatively up-to-date

information on any changes in Intelligence Community employees' morale and their perceptions

of politicization in intelligence assessments.

9.      Plaintiffs seek the Court's help to obtain these documents, to which they are

entitled under FOIA.

## JURISDICTION AND VENUE

10.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)

and 28 U.S.C. § 1331.

11.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

12.      Plaintiff Benjamin Wittes is the editor-in-chief of *Lawfare*, an online publication

published by The Lawfare Institute, a 501(c)(3) not-for-profit educational organization, in

cooperation with the Brookings Institution, a 501(c)(3) nonprofit public policy organization.

*Lawfare* is dedicated to informing public understanding on the operations and activities of the

government.

13.      Plaintiff Scott R. Anderson is a Senior Editor of *Lawfare* and a Fellow in

Governance Studies at the Brookings Institution.

14.      Plaintiffs intend to give the public access to the documents obtained through this

FOIA request on *Lawfare*'s website (www.lawfareblog.com). Plaintiffs also intend to provide

information about and analysis of the documents as appropriate.

15.      Defendant Office of the Director of National Intelligence is an agency of the

Executive Branch of the federal government of the United States within the meaning of 5 U.S.C.

§ 552(f)(1). Defendant is headquartered in Washington, DC. Plaintiffs have reason to believe that

Defendant has possession, custody, and control of the documents that Plaintiffs seek.

**STATEMENT OF FACTS**

16.     On May 13, 2020, Plaintiffs sent two FOIA requests to Defendant. The first

request (the "AOPS request") sought the following records:

(i)     Any records reflecting the results of the Analytic Objectivity and Process Surveys
        (AOPS) administered from 2015 through 2020, including those with results
        broken down by individual agency, office, or component.

(ii)    Records describing the processing of the AOPS request, including records
        sufficient to identify search terms used and locations and custodians searched and
        any tracking sheets used to track the processing of the AOPS request.

*See* Plaintiffs' AOPS request, a true and correct copy of which is attached hereto as Exhibit A.

17.     In the AOPS request, Plaintiffs further specified their understanding "that the

Office of the Director of National Intelligence (ODNI) administers the AOPS throughout the

intelligence community on an annual basis." *Id.*

18.     The second FOIA request concerned the climate surveys (the "climate survey

request," and, together with the AOPS request, "the requests") and sought the following records:

(i)     Any records reflecting the results of the annual intelligence community employee
        climate surveys that were administered from 2015 through 2020, including those
        with results broken down by individual agency, office, or component.

(ii)    Records describing the processing of the climate surveys request, including
        records sufficient to identify search terms used and locations and custodians
        searched and any tracking sheets used to track the processing of the climate
        surveys request.

*See* Plaintiffs' climate surveys request, a true and correct copy of which is attached hereto as

Exhibit B.

19.     In the climate surveys request, Plaintiffs explained their understanding that "the

Office of the Director of National Intelligence (ODNI) administers the climate survey throughout the intelligence community on an annual basis. We are aware that some partial results are already publicly available on the ODNI's website (https://www.dni.gov/index.php/read-released-records), but are seeking additional records showing more recent survey results and that break results down by agency, office, or component." *Id.*

20.     Plaintiffs requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II) in both requests. *See* Exhibits A and B.

21.     Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) in both requests. *Id.* Plaintiffs' requests were narrowly tailored to make it easy for the ODNI to respond to them in an expedited fashion.

22.     On May 13, 2020, Plaintiffs submitted their requests via email to Defendant's designated FOIA email address, dni-foia@dni.gov. *Id.*

23.     On May 14, 2020, Plaintiffs received three emails from Defendant, two of which were identical. Each of Defendant's emails responded to one of Plaintiffs' requests and each had an attached letter acknowledging receipt of the request. *See* Exhibits C and D (together, the "acknowledgment letters"). In the acknowledgment letters, Defendant granted Plaintiffs' requests for fee waivers and denied Plaintiffs expedited processing of their requests. *Id.*

24.     In its acknowledgment letters, Defendant assigned a tracking number and stated that it would "begin to process [the] request[s] for information in the first bullet above," referring to ¶¶16(i) and 18(i), *supra*. *Id.* Defendant denied Plaintiffs' requests for "records describing the processing of the request[s]" as well as "any such records prepared in connection with the processing of the request[s]." *Id.*

25.     Defendant did not provide any further information concerning its processing of

the requests. *Id*. Defendant did not state whether it had performed a search or identified responsive documents. *Id.* Defendant did not provide any determination as to the scope of the documents, if any, it intends to produce and the exemptions it may claim with respect to any documents it may eventually withhold. *Id.* Nor did Defendant provide any particularized reasons for agreeing to begin processing Plaintiffs' substantive requests or a timeline for producing or withholding the records sought. *Id*.

26.     On June 29, 2020, Plaintiffs emailed Defendant's FOIA email address, dni-foia@dni.gov, with a request for Defendant to "provide the status of [Plaintiffs'] requests' processing with timelines for expected disclosure, if available." *See* Exhibit E. Defendant responded on July 2, 2020, stating that Plaintiffs' "requests are being processed, case DF-2020-0234 is number 605 in the queue and case DF-2020-0235 is number 606 in the queue.  Until anything on the status of [Plaintiffs'] requests have change [sic], we will not provide any further updates." *Id*.

27.     Plaintiffs emailed and called Defendant's FOIA liaison several times seeking to discuss the status of the requests. On July 15, a Defendant employee emailed Plaintiffs to inform them that the ODNI FOIA liaison was "aware of [their] request" and previous emails but was out of the office and would be unable to respond until Monday July 20, 2020. *See* Exhibit F.

28.     As of July 23, 2020, Defendant still had not responded to Plaintiff's request. The last correspondence with Defendant took place on July 15, 2020. *See* Exhibit F.

29.     As of today, July 23, 2020, forty-eight working days have passed since Defendant received Plaintiffs' request. To date, Defendant has failed to respond to Plaintiffs with its determination of Plaintiffs' requests and has not disclosed the requested information.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

30.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

31.     Defendant is in violation of FOIA by failing to respond to Plaintiffs' AOPS request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiffs' request.

32.     Pursuant to FOIA, within 20 business days of receipt of Plaintiffs' AOPS request Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," Plaintiffs' right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). In this case, that deadline was June 12, 2020. In its May 14, 2020 acknowledgment letter, Defendant did not notify Plaintiffs of its "determination and the reasons therefor" as required by the statute. *See* Exhibit C.

33.     Defendant's communications in its acknowledgment letter regarding the AOPS fail to satisfy FOIA's requirement for a "determination" within the statutory time limit. As this Circuit has previously held, an agency's FOIA "determination" must include several elements, namely, an indication "within the relevant time [of] period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents," *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182–183 (D.C. Cir. 2013). Moreover, upon making such a determination, an agency must "provide the reasons for its determination," and those reasons must be "particularized to the determination." *Id*. at 186.

34.     Defendant has failed to satisfy these requirements and has therefore failed to

comply with FOIA in responding to the AOPS request. Defendant's actions entitle Plaintiffs to immediately seek judicial relief without any need to exhaust administrative appeal remedies, as the 20-working day period in which Defendant must have provided Plaintiffs a determination has passed and the ODNI did not invoke FOIA's "unusual circumstances" safety valve, which would have granted Defendant ten additional working days to notify Plaintiffs of its determination concerning their AOPS request (which period, even if Defendant had invoked the exemption, would have passed by now). *See id.* at 280.

## COUNT II
### (Violation of FOIA, 5 U.S.C. § 552)

35.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

36.     Defendant is in violation of FOIA by failing to respond to Plaintiffs' climate survey request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiffs' request.

37.     Pursuant to FOIA, within 20 business days of receipt of Plaintiffs' climate survey request Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiffs of "such determination and the reasons therefor," Plaintiffs' right "to seek assistance from the FOIA Public Liaison of the agency," and, in the case of an adverse determination, Plaintiffs' appeal rights. 5 U.S.C. § 552(a)(6)(A)(i). In this case, that deadline was June 12, 2020. In its May 14, 2020 acknowledgment letter, Defendant did not notify Plaintiffs of its "determination and the reasons therefor" as required by the statute. *See* Exhibit D.

38.     Defendant's communications in its acknowledgment letter regarding the climate survey fail to satisfy FOIA's requirement for a "determination" within the statutory time limit. As this court previously held, an agency's FOIA "determination" must include several elements,

namely, an indication "within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents," *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182–183 (D.C. Cir. 2013). In addition, upon making such a determination, an agency must "provide the reasons for its determination," and those reasons must be "particularized to the determination." *Id*. at 186.

39.     Defendant has thus far failed to satisfy these requirements and has therefore failed to comply with FOIA in responding to the climate survey request. Defendant's actions entitle Plaintiffs to seek judicial relief without any need to exhaust administrative appeal remedies, as the 20-working day period in which Defendant must have provided Plaintiffs a determination has passed and the ODNI did not invoke FOIA's "unusual circumstances" safety valve, which would have granted Defendant ten additional working days to notify Plaintiffs of its determination concerning their climate survey request (which period, even if Defendant had invoked the exemption, would have passed by now). *See id.* at 280.

## PRAYER FOR RELIEF

40.     Plaintiffs respectfully request that the Court:

(1)     Order Defendant, by a date certain, to make determinations concerning Plaintiffs' requests;

(2)     Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiffs' requests;

(3)     Order Defendant, by a date certain, to demonstrate that it has conducted an adequate search;

(4)     Order Defendant, by a date certain, to produce to Plaintiffs any and all non-

exempt records or portions of records responsive to Plaintiffs' request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(5)     Enjoin Defendant from improperly withholding records responsive to Plaintiffs' request;

(6)     Grant Plaintiffs an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E);

(7)     Grant Plaintiffs such other relief as the Court deems appropriate.

Respectfully submitted,

Date: July 23, 2020                          /s/_____
                                             Anne H. Tindall (D.D.C. Bar No. 494607)
                                             The Protect Democracy Project, Inc.
                                             2020 Pennsylvania Ave. NW, Ste. 163
                                             Washington, DC 20006
                                             Phone: (202) 579-4582
                                             Fax: (929) 777-8428
                                             anne.tindall@protectdemocracy.org

                                             *Counsel for Plaintiffs*